**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ———————————————— : | | |
| H.T. and S.T. o/b/o V.T. | : | Case No. 14-1308 (FLW) (LHG) |
| | : | **OPINION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HOPEWELL VALLEY REGIONAL | : | |
| BOARD OF EDUCATION, | : | |
| | : | |
| Defendant. | : | |
| ————————————————: | | |

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion for Summary Judgment by Plaintiffs H.T. and S.T., on behalf of their child, V.T. (collectively "Plaintiffs"), and a Cross-Motion for Summary Judgment by Defendant Hopewell Valley Regional Board of Education ("Defendant" or "school district"). After unilaterally removing V.T. from the school district, Plaintiffs petitioned for a due process hearing, under the Individuals with Disabilities Education Act ("IDEA"); the petition was dismissed by an Administrative Law Judge ("ALJ") as insufficient. Plaintiffs assert that this dismissal was erroneous and untimely. Defendant argues that the petition was insufficient, and that the timeliness of the decision does not invalidate the ALJ's sufficiency determination. For the reasons expressed herein, Defendants' Motion for Summary Judgment is granted, and the ALJ's decision is affirmed; Plaintiffs' Motion for Summary Judgment is denied.

## BACKGROUND

### A. Individuals with Disabilities Education Act (IDEA)

Through the IDEA, 20 U.S.C. § 1400, *et seq.*, the federal government provides funding to assist states in educating children with disabilities living within their borders. *Bd. of Educ. of the Hendrick Hudson Cent. Schl. Dist. v. Rowley*, 458 U.S. 176 (1982)). Among the IDEA's purposes is "assuring that all handicapped children have available to them a free and appropriate public education which emphasizes special education and related services designed to meet their unique needs." *L.P. v. Edison Bd. of Educ.*, 265 N.J. Super. 266, 272 (Law Div. 1993) (citing 20 U.S.C. § 1400(c)). The IDEA realizes this aim by imposing a series of goals and procedures on participating states. *See Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002); *L.P.*, 265 N.J. Super. at 272–73 (describing requirements of 20 U.S.C. §§ 1412 and 1413).

Under the IDEA, the right to a "free and appropriate public education" is safeguarded by elaborate procedural mechanisms, including the right to a due process hearing before a state administrative official. *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994) (citing 20 U.S.C. § 1412; 20 U.S.C. § 1415(b)). Parties who are "aggrieved by the findings and decision" of a due process hearing may bring a civil action in court, and the court grants such relief as may be appropriate." *Id.*

"Although state authorities have limited discretion to determine who conducts the hearings, . . . and responsibility generally for establishing fair hearing procedures, . . . Congress has chosen to legislate the central components of due process hearings." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005). Indeed, both the federal IDEA statute and its implementing regulations under federal and state law provide clear guidelines as to the required contents of the

petition filed to request a due process hearing.[1] The federal statute states that such a petition must include:

> (I) the name of the child, the address of the residence of the child (or available contact information in the case of a homeless child), and the name of the school the child is attending; . . . (III) a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem; and (IV) a proposed resolution of the problem to the extent known and available to the party at the time.

20 U.S.C. § 1415(b)(7)(A); *see also* 34 C.F.R. § 300.508(b).

The New Jersey implementing regulations state that "a due process hearing may be requested when there is a disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free, appropriate public education, or disciplinary action." N.J.A.C. 6A:14-2.7(a). The regulation further requires that a due process petition "state the specific issues in dispute, relevant facts and the relief sought." *Id.* at 6A:14-2.7(c).

Upon receipt of the petition, the school district has fifteen days to notify the hearing officer and the petitioner whether it believes the petition does not meet the requirements listed above. 20 U.S.C. § 1415(c)(2)(C); 34 C.F.R. § 300.504(d)(1); N.J.A.C. 6A:14-2.7(f). Within five days of receiving the notification of the sufficiency challenge, "the hearing officer shall make a determination on the face of the due process complaint of whether the due process complaint meets the requirements" described above. 34 C.F.R. § 300.504(d)(2); *see also* 20 U.S.C. § 1415(c)(2)(D).[2]

---

[1] Although the parties describe the document at issue as a "due process petition," the federal statute and regulations use the term "due process complaint" or "due process complaint notice"; the New Jersey regulations use the term "request for a due process hearing." These terms shall be used interchangeably.

[2] The statute states that "the hearing officer shall make a determination on the face of the notice of whether the notification meets the requirements of subsection (b)(7)(A)"; the word "notice" refers to the "due process complaint notice" in § 1415(b)(7)(A).

**B. Factual Background and Procedural History**

On May 13, 2013, Plaintiffs, the parents of V.T., a minor, filed a due process petition against Defendant, the Hopewell Valley Regional Board of Education, with the New Jersey Office of Special Education Programs. Pl. Statement of Undisputed Material Facts (hereinafter "Pl. SUMF") ¶ 1; Def. Counterstatement of Undisputed Material Facts (hereinafter "Def. SUMF") ¶ 1. The petition alleged that V.T., a then-17-year old student, was at that time enrolled at the Family Foundation School ("FFS"), a private therapeutic boarding school, and had attended the school since May 3, 2012. Pl. SUMF Ex. A. (hereinafter "May 13 Petition") ¶ 3. Prior to attending FFS, V.T. had been enrolled in Somerset County Education Services Commission – Alternate Academic Programs" (herein after "Alternative High School") for a "brief period in 2012." *Id.* ¶ 4.

According to the petition, V.T. was sent to the Alternative High School following an alleged violation of the Hopewell Valley Central High School policy on drug use. *Id.* ¶ 9. In April 2012, V.T. was suspended for four days from the Alternative High School; that same month, V.T. was admitted to Princeton House Behavioral Health, and then the Carrier Clinic, as the result of bipolar disorder, psychosis, and cannabis abuse. *Id.* ¶¶ 11–12.

The May 13 Petition alleged that "the district was aware that V.T. was being treated . . . since May 2011 for depression with unstable mood disorder, Bipolar Disorder, ADHD, etc., yet took no action to be of assistance to V.T. or his family." *Id.* ¶ 13. The May 13 Petition then cites to numerous exhibits, attached to the petition, regarding V.T.'s mental health status. *Id.* ¶ 16. The May 13 Petition proposed as a resolution that Defendant declare that "V.T. was and is Eligible for Special Education and Related Services" and that, if eligible, the district should provide an Individualized Educational Plan ("IEP"), including continued placement at FFS, and that the

4

school reimburse V.T.'s family for the costs of FFS. *Id.* ¶ 18(F).[3]

On May 29, 2013, Defendant filed a timely challenge to the sufficiency of the May 13

Petition, pursuant to 20 U.S.C. § 1415(c)(2)(A). Def. SUMF ¶ 3, Pl. SUMF Ex. F. On June 6,

2013, Administrative Law Judge Joseph F. Martone issued a decision finding that the Petition

was insufficient. Def. SUMF ¶ 4; Pl. SUMF Ex. C (hereinafter "June 6 Decision"). The ALJ first

stated that the May 13 Petition "properly states the name of the child, the address of the

residence of the child, and the name of the school the child is attending." June 6 ALJ Decision at

3. The ALJ repeated the factual assertions in the petition, *id.* at 3–4, and then found that:

> there is absolutely no assertion contained anywhere in the due
> process hearing request that the petitioners sought an eligibility
> determination, evaluations, or other relief and that the school
> district refused to the provide same. In effect, there is no conduct
> or action of the school district amounting to a refusal of the
> petitioners' demands that the school district identify, evaluate or
> otherwise classify V.T. as eligible for special education and related
> services.
>
> [*Id.* at 4.]

Accordingly, the ALJ found that the Petition did not "set forth a description of the nature of the

problem relating to the proposed or refused initiation or change." The ALJ concluded that the

facts alleged in the May 13 Petition did "not involve a disagreement regarding the identification,

evaluation, educational placement and the provision of a free appropriate public education to

V.T." and that the petition did "not set forth a description of the nature of the problem relating to

the proposed or refused initiation or change." *Id.* at 5. Thus, the ALJ found the petition was not

sufficient, and dismissed it.

---

[3] It is undisputed that V.T. was never referred to the school district's Child Study Team for
consideration for special educational services, and thus was never found eligible for special
education or any other services.

Plaintiffs appealed the June 6 Decision by filing a Complaint in the United States District Court for the District of New Jersey on June 25, 2013, *see* Civ. No. 13-3908(AET)(LHG); this Complaint was withdrawn on February 20, 2014, pursuant to a letter request filed by Plaintiffs on December 6, 2013. Def. SUMF ¶ 6. On June 12, 2013, Plaintiffs filed a second petition, which was identical to the prior petition save for a single paragraph. Def. SUMF ¶ 7, Pl. SUMF ¶ 6; *see also* Pl. SUMF Ex. B ("hereinafter "June 12 Petition"). That paragraph quoted the above language from the ALJ's decision, and further stated:

> (See Exhibit "W"). While same is on appeal with the United States District Court[4], without prejudice Petitioners hereby assert that they attempted to seek assistance from the district both prior and after the unilateral placement herein including, but not limited, to the attached correspondences. (See Exhibit "X"). In addition, Petitioners rely upon the attached Report and curriculum vitae of Dr. Charles Martinson, a child psychiatrist who regularly consults for school districts including the district herein. (See Exhibit "Y").

> [June 12 Petition ¶ 19].

Again, numerous exhibits where attached to the petition.

On June 20, 2013, Defendant filed a timely sufficiency challenge to the June 12 Petition. Def. SUMF ¶ 8. On July 1, 2013, ALJ Martone found the June 12 Petition also insufficient. Pl. SUMF Ex. I (hereinafter "July 1 Decision"). The ALJ noted the additional paragraph, but stated that the exhibits attached to the petition "only go up to Exhibit 'V.' I could find no exhibit 'W', nor does a cursory review of all the exhibits reveal any correspondences that support the assertion that the petitioners 'attempted to seek assistance from the district . . . .'" *Id.* at 2–3. The ALJ nonetheless found that the June 12 Petition "does assert the existence of a disagreement

---

[4] Although Plaintiffs state that the June 6 Decision was "on appeal," the docket clearly reflects that, at the time of the filing of the June 12 Petition, no appeal had yet been filed in the District Court. This Court cannot discern whether this language in the Petition is deliberately misleading, or if it merely inarticulately reflects Plaintiffs' intention to appeal.

regarding the identification, evaluation, classification, educational placement and the provision of a free appropriate public education to V.T." *Id.* at 5. However, the ALJ further found that the June 13 Petition "FAILS to set forth a description of the nature of the problem relating to the proposed or refused initiation or change, and it FAILS to include a statement of the facts relating to the existence of the dispute between the parties." *Id.* Out of fairness to the parties, the ALJ granted permission to Plaintiffs to file an amendment to their Petition "to provide a statement of the facts relating to the existence of the dispute between the parties. Specific facts shall be supplied by petitioners supporting their claims that they attempted to seek assistance from the district both prior and after the unilateral placement." *Id.*

Plaintiffs filed an Amended Petition on July 11, 2013. *See* Pl. SUMF ¶ 15, Ex. K (hereinafter "Amended Petition"). Plaintiffs again attached numerous exhibits to the Amended Petition, including the four exhibits missing from the previous Petition, which were attached as Exhibit "D." *See* Amended Petition ¶ 6. In the Amended Petition, Plaintiffs referenced specific exhibits. Plaintiff pointed to "[t]he expert report of Susan M. Caplan" attached as Exhibit "E," which "specifically concludes, in part, that the district had an obligation to, at the very minimum, evaluate the child herein and that the parents contacted the district both prior and after the unilateral placement." *Id.* ¶ 7(A).  Plaintiffs also indicated that Exhibit "G" consisted of records from the district "that clearly demonstrate that the district was aware of the multiple issues affecting V.T.'s ability to access education in a meaningful manner," but, also, that the district "failed to initiate any action on their own as required by 'Child Find'" and that the district "was aware of the parents [sic] desire to have V.T. evaluated and the like." *Id.* ¶ 7(C). Finally, Plaintiffs drew attention to Exhibit "H," which, they contend, shows that the district knew or should have known that V.T. "at a minimum, required '504 Services.'" *Id.* ¶ 7(D). The Amended

Petition repeated the proposed resolution of the dispute. *Id.* ¶ 8.

Defendant filed a sufficiency challenge to the Amended Petition on July 16, 2013. Def. SUMF ¶ 13. At this point, the procedural history becomes unclear. Plaintiffs allege that ALJ Martone retired, Pl. SUMF ¶ 16, and that the case was assigned first to ALJ Lisa James-Beavers, and then to ALJ Robert Bingham II ("ALJ Bingham"), *id.* ¶ 17. In the interim, both parties evidently sought guidance from the Office of Special Education Programs on the matter. *Id.* ¶ 16, Def. Reply to SUMF ¶ 16. Ultimately, a Due Process Hearing was scheduled for February 5, 2014, before ALJ Bingham. *See* Pl. SUMF Ex. L.

However, on January 15, 2014, Defendant sent a letter to ALJ Bingham, reiterating Defendant's position "that the Amended Petition for Due Process . . . remains insufficient, as it did not comply with the order from Judge Martone." Pl. SUMF Ex. L. Shortly thereafter, on January 29, 2014, ALJ Bingham issued a Decision on the Sufficiency of the Complaint. Pl. SUMF Ex. M (hereinafter "Jan. 29 Decision"). ALJ Bingham, after reviewing the amended due process complaint, concluded that "it does not set forth the information required." *Id.* at 3. In particular, the ALJ found that

> it does not aver specific facts, as ordered by Judge Martone, supporting petitioners' claim that they attempted to seek assistance from the district both prior to and after the unilateral placement. Rather than describing specific facts, the amended complaint merely references attached exhibits. It does not specific what exactly was requested, from whom, when, and how such requests were made.
>
> [*Id.*]

ALJ Bingham therefore dismissed the petition. *Id.*

On February 28, 2014, Plaintiffs filed a Complaint in this Court appealing ALJ Bingham's decision, and requesting costs and fees. On January 12, 2015, Plaintiffs moved for Summary Judgment, asserting that ALJ Bingham erred in finding the petition insufficient; on

February 9, 2015, Defendant filed an opposition and cross-motion for Summary Judgment, contending that the sufficiency determination was correct.

**STANDARD OF REVIEW**

The parties have styled their motions as summary judgment motions. This practice is "permissible under the IDEA," but the Court's decision "is not a true summary judgment procedure. Instead, the district court essentially conducts a bench trial based on a stipulated record." *D.B. ex rel. H.B. v. Gloucester Twp. Sch. Dist.*, 751 F. Supp. 2d 764, 769 (D.N.J. 2010) *aff'd sub nom. D.B. v. Gloucester Twp. Sch. Dist.*, 489 Fed. App'x 564 (3d Cir. 2012) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993)). In deciding an IDEA case, this Court must "appl[y] a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). That is, "[f]actual findings from the administrative proceedings are to be considered prima facie correct" and if the court "fails to adhere to them, it is obliged to explain why." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).

The Court's review over questions of law and the ALJ's application of legal precepts, however, is plenary. *Carlisle Area Sch. v. Scott P. By and Through Bess P.*, 62 F.3d 520, 528, n.3 (3d Cir. 1995); *D.B. v. Ocean Township Bd. of Educ.*, 985 F. Supp. 457, 500 (D.N.J. 1997); *Bucks Cty. Dept. of Mental Health/Mental Retardation v. De Mora*, 227 F.Supp.2d 426, 428 (E.D. Pa. 2002).

**DISCUSSION**

Plaintiffs' Complaint and Motion present two related issues. First, Plaintiffs contend that

ALJ Bingham incorrectly determined that the Amended Petition was insufficient. Second, Plaintiffs assert that ALJ Bingham's decision must be reversed as it was not made within the time limitation prescribed by statute. However, an additional issue, albeit not raised by the parties, is whether this Court has jurisdiction to consider this issue. Because a federal court has an independent duty to assess jurisdiction, *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see also* Fed. R. Civ. Proc. 12(h)(3), I must address this issue first.

## A. Jurisdiction

Federal courts are courts of limited jurisdiction: "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Although the IDEA gives parents the right to have a hearing before a state administrative official, the statute also expressly gives parents the right to file a civil action in federal court to review the administrative decision. *See* 20 U.S.C. § 1415(i)(2)(A). However, the right to file a civil action in federal district court for review of the state administrative action is not unlimited; rather, the statute provides that:

> Any party aggrieved by the findings and decision made under subsection (f) or (k)[5] who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.
>
> [*Id.*]

Subsection (f) of the statute describes the "impartial due process hearing" conducted by "the

---

[5] Subsection (k), which is not at issue here, discusses the process for placement of a child in an alternative educational setting. Id. at § 1415(k).

State educational agency or by the local educational agency." *Id.* at § 1415(f)(1)(A). Subsection (g) provides that the subsection (f) "impartial due process hearing" before a local educational agency may be appealed to the State educational agency. *Id.* at § 1415(g). Subsection (i)—"this subsection"—provides that decisions made in hearings under subsections (f), (k), and (g) "shall be final." *Id.* at § 1415(i)(1).

The plain language of the statute, therefore, permits an appeal to the federal courts only where a party is "aggrieved by the findings and decision" made under subsections (f), (k), or (g). However, a determination by an ALJ that a due process petition is insufficient is made pursuant to subsection (c); if the petition is found insufficient, no impartial hearing under subsection (f) is ever held, nor will an appeal under subsection (g) occur. The statute, therefore, does not provide for an appeal of the sufficiency determination to the federal courts.

Indeed, two district courts, and one Circuit court, have found that the federal courts lack jurisdiction to hear an appeal of a sufficiency determination for precisely this reason. *See Knight v. Washington Sch. Dist.*, Civ. No. 09-0566 (ERW), 2010 WL 1909581 (E.D. Mo. May 10, 2010); *aff'd* 416 Fed. App'x 594 (8th Cir. 2011); *G.R. ex rel. Russell v. Dallas Sch. Dist. No. 2*, Civ. No. 10-232 (KI), 2010 WL 5232958 (D. Ore. Dec. 15, 2010). The *Knight* court, in addition to examining the statutory language, quoted part of the legislative history:

> A due process complaint notice filed under section 615(b)(7)(A) is deemed to be sufficient for purposes of going to a due process hearing. However, if the party receiving the notice believes it to be insufficient, section 615(c)(2) requires the receiving party to notify the hearing officer and the other party within 20 days of receiving the notice. A hearing officer then has five days from receipt of the notice of insufficiency to determine whether the due process complaint notice meets the statutory requirements. *This determination shall be made on the face of the complaint. There should be no hearing or appeal in regard to the hearing officer's determination.*

11

[*Knight*, 2010 WL 1909581 at *8 (quoting S. Rep. No. 108–185, at 35 (2003) (emphasis added))].

The plain language of the statute does not appear to provide for a judicial appeal of a sufficiency determination under § 1415(c)(2)(D), and furthermore legislative history supports that conclusion.

There is, however, a paucity of case law on the federal courts' jurisdiction over an appeal of a sufficiency determination. Moreover, while I note that the Third Circuit, as well as courts in the District of New Jersey, have decided appeals from sufficiency decisions, none have considered the question of jurisdiction. *See M.S.-G v. Lenape Reg'l High Sch. Dist. Bd. of Educ.*, 306 Fed. App'x 772, 775 (3d Cir. 2009); *D.F. v. Collingswood Pub. Sch.*, Civ. No. 10-594 JEI/JS, 2013 WL 103589 (D.N.J. Jan. 8, 2013). Just as here, it appears that in those cases, the parties never raised the jurisdictional issue. Accordingly, while I find that under the plain language of the statute, it appears that this Court lacks jurisdiction to determine whether the ALJ correctly dismissed Plaintiffs' due process petition, nonetheless, out of an abundance of caution, and to prevent any undue delay to the parties, I will address the substantive issues here: whether the ALJ correctly determined that the Amended Petition was insufficient, and whether the timing of the ALJ's decision renders it void.

**B. Sufficiency of the Petition**

Plaintiffs make two arguments with respect to the sufficiency of the petition. First, Plaintiffs assert that ALJ Bingham erred in refusing to consider the exhibits submitted with the Amended Petition. Second, Plaintiffs assert that, even in the absence of the exhibits, the Amended Petition was sufficient under the statute. The sufficiency of the due process petition is a question of law, rather than a question of fact, *c.f. Ashcroft v. Iqbal*, 556 U.S. 662, 674–75 (2009) (finding that "disposition of a motion to dismiss a complaint for insufficient pleadings"

falls within the category of "'abstract' legal questions"); thus, my review of the ALJ determination is plenary.

ALJ Martone determined that Plaintiffs' June 13 Petition failed to "set forth a description of the nature of the problem relating to the proposed or refused initiation of change" and to "include a statement of facts relating to the existence of a dispute between the parties" July 1 Decision; ALJ Bingham found that the Amended Petition did not rectify this insufficiency. Jan. 29 Decision (concluding that the petition "does not set forth the information required"). Plaintiffs, however, argue that ALJ Bingham erred in refusing to consider the documents attached to the petition as exhibits. According to Plaintiffs, "[t]here simply is no logical reason . . . why a Petitioner must be compelled to recite a statement otherwise provided for in an attached document in order for the ALJ to consider its content in making a sufficiency determination." Pl. Br. at 8. Indeed, Plaintiffs note that the federal district courts are permitted to consider exhibits attached to a complaint when deciding a motion to dismiss. *Id.* at 9–10.

Defendant contend that there is no authority that a complaint can be found sufficient based on attached documents. Def. Br. at 10. Further, Defendant notes that "the practice of attaching exhibits to petitions has never been sanctioned by the Office of Administrative Law and now has been explicitly prohibited." *Id.* (citing Memorandum from Laura Sanders, Acting Director and Chief Administrative Law Judge of the State of New Jersey Office of Administrative Law, ¶ 4 (Sept. 22, 2014) ("The number of exhibits accompanying the initial filing with the Office of Special Education (OSE) and the OAL has been rising. Neither OSE nor OAL will continue to accept documents that are not in evidence, as the appropriate time for offering evidence is at a hearing.")). Although that Memorandum post-dates the ALJ's decision here, its underlying rational is pertinent.

13

I find that the ALJ did not err in refusing to consider the exhibits attached to Plaintiffs' due process petitions. The statute and the federal regulation are clear that the sufficiency decision must be made "on the face of the complaint." 34 C.F.R. § 300.504(d)(1). Moreover, the statute and regulations provide that the complaint itself "shall include" a description of the nature of the problem. 20 U.S.C. § 1415(b)(7)(A)(ii); 34 C.F.R. § 300.504(b) (stating that the complaint "must include" such a description). The statute and regulations simply do not provide for the description of the problem to be included in exhibits attached to a due process petition, requiring an ALJ to parse through what might be numerous and lengthy exhibits, to hunt for the petitioner's claims.

Plaintiffs' argument that there is "no logical reason" to require such a statement in the Petition misses the point: the statute does, in fact, require that a statement be included in the petition. Moreover, Plaintiffs' comparison to a Motion to Dismiss, in which a court may consider exhibits attached to a complaint, is inapt. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court may consider exhibits attached to a complaint, merely attaching exhibits to a complaint is insufficient to meet the requirement that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, Civ. No. 13-77 JLL, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff cannot meet its *pleading* requirements under Rule 8(a) by attaching numerous exhibits to its Complaint." (emphasis in original)).

Plaintiffs additionally assert that ALJ Martone "invited" the inclusion of exhibits in the Amended Petition. Pl. Repl. at 14. Plaintiffs cite the July 1 Decision, which stated that "[s]uch an amendment . . . may be limited to an amendment of paragraph 19 to include the specific

supporting facts and the supporting exhibits." *Id.*; *see also* July 1 Decision at 5. However, I do

not read this language as permitting Plaintiffs to rely entirely on their exhibits. While ALJ

Martone may have permitted Plaintiffs to include supporting exhibits, he also ordered Plaintiffs

to include in their amendment "the specific supporting facts." I therefore find that ALJ Bingham

did not err in refusing to rely on the exhibits attached to the Amended Petition to fill in the facts

missing from the face of the petition.

  Moreover, I find that ALJ Bingham correctly found that the Amended Petition, on its

face, was insufficient for failing to contain "a description of the nature of the problem of the

child relating to such proposed initiation or change, including facts relating to such problem." 20

U.S.C. § 1415(b)(7)(A). While the pleading requirements of the IDEA statute are "minimal,"

they are more than a "bare notice pleading requirement." *M.S.-G v. Lenape Reg'l High Sch. Dist.*

*Bd. of Educ.*, 306 Fed. App'x 772, 775 (3d Cir. 2009). Thus, for example, in *M.S.-G.*, the district

court found that the due process request only stated the following facts: "1) that M.S.G. is in the

tenth grade at Shawnee High School; 2) he is classified as "emotionally disturbed"; 3) the school

suspended him for at least 10 days; and 4) he is drug dependent." *M.S.-G ex rel. K.S.-G v.*

*Lenape Reg'l High Bd. of Educ.*, Civ No. 06-02847(JHR), 2007 WL 269240, at *3 (D.N.J. Jan.

24, 2007) (subsequent history omitted). However, the court stated that "M.S.-G.'s letter does not

state why the school suspended M.S.-G. or the nature of M.S.-G.'s problem and how it relates to

the suspensions," and that the request "does not state how to solve the problem, beyond

requesting remedial education; returning M.S.-G. to school; and psychiatric evaluation and

treatment. M.S.G.'s letter does not state how this will resolve the problem, perhaps in part

because M.S .-G. does not identify the problem." *Id.* The district court therefore affirmed the

ALJ's dismissal of the case because "it fails to conform to the pleading standards required by the

statute."

Similarly, in *D.F. v. Collingswood Pub. Sch.*, Civ. No. 10-594 JEI/JS, 2013 WL 103589 (D.N.J. Jan. 8, 2013), the district court affirmed an ALJ determination that "the bare assertion that D.F. was 'improperly restrained'" was insufficient. *Id.* at *4. The court agreed with the ALJ that "the question left unanswered by Plaintiff's petition is, what was improper about the restraint(s)? Perhaps it was the fact that D.F. was restrained at all, or the frequency of the restraint(s), or the nature of the restraint(s), or the length of time D.F. was restrained, to name just a few possibilities." *Id.* Thus, "Plaintiff alleged no facts that would put Defendant on sufficient notice as to the 'nature of the problem.'" *Id.*

Here, the Amended Petition points to exhibits, and alleges that the exhibits state certain facts. For example, the Amended Petition says that an attached expert report concludes that "the district had an obligation to, at the very minimum, evaluate the child." Amended Petition ¶ 7(A). Similarly, the Amended Petition alleges that school district records "clearly demonstrate that the district was aware of the multiple issues affecting V.T.'s ability to access education." *Id.* ¶ 7(C). These statements, however, are not facts, but conclusory allegations, and the Amended Petition does not, on its face, present facts to support these conclusions.

Moreover, even if the Petitions are considered together, the allegations contained in the June 13 Petition[6] are not clear as to the specific facts underlying Plaintiffs' claim. The June 13 Petition does provide some facts related to the problem, namely that V.T. had been brought to the emergency room due to "alleged delusions," and that V.T. was transferred to the Alternative High School due to "alleged drug use." *See* June 13 Petition ¶¶ 4, 9. The June 13 Petition also

---

[6] It is unclear from the papers whether the Amended Petition was intended to supplement the June 13 Petition, or to stand on its own.

states that V.T. was treated for "depression with unstable mood disorder, Bipolar Disorder, ADHD, etc." *Id.* ¶ 13. In addition, the June 13 Petition cites to notes from Dr. Gursky, one dated February 23, 2012, which stated that V.T. was being treated for ADHD and "would benefit from 504 Accommodations," and one dated April 24, 2012, which stated that V.T. "suffers from depression with unstable mood . . . . It is possible he suffers from Bipolar Disorder . . . . He suffers from cannabis abuse." *Id.* ¶ 16(D). These notes were allegedly provided to the school district, though the Petition does not state when or the means of transmittal. *Id.*

ALJ Bingham found that the Amended Petition "does not set forth the information required," and that it was particularly lacking "specific facts . . . supporting petitioners' claim that they attempted to seek assistance from the district both prior to and after the unilateral placement." Jan. 29 Decision at 3. ALJ Bingham further stated that the Amended Petition "does not specify what exactly was requested, from whom, when, and how such requests were made." *Id.* I agree with ALJ Bingham's determination. Indeed, while the June 13 Petition alleges conclusorily that V.T.'s parents sought help from the district "both prior and after the unilateral placement," neither Petition provides any of the relevant facts on this matter, i.e. when and what help was requested, who made the request, to whom the request was made, and how the request was made, in writing or orally.[7] These are the most basic, minimal allegations required to satisfy a sufficiency determination. They are all absent from the Petition and Amended Petition.

In addition to the claim that Plaintiffs sought assistance from the school, the Amended Petition alleges that "the district failed to initiate any action on their own as required by 'Child Find.'" Amended Petition ¶ 7(E). "School districts have a continuing obligation under the IDEA

---

[7] Although the notes from Dr. Gursky are dated, the petition does not state when they were provided to the school.

and § 504—called 'Child Find'—to identify and evaluate all students who are reasonably suspected of having a disability under the statutes." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012). However, neither the Amended Petition nor the June 13 Petition provide a clear factual basis to explain when the district should have known of its obligation under Child Find, or what action the district should have taken. Indeed, "Child Find does not demand that schools conduct a formal evaluation of every struggling student." *Id.* at 249. Moreover "[a] school's failure to diagnose a disability at the earliest possible moment is not *per se* actionable." *Id.* Plaintiffs were required to present the "relevant facts" on the dispute regarding the school district's Child Find obligation, *see* N.J.A.C. 6A:14-2.7(c), but Plaintiffs have not plead when the school district was, or should have been, on notice of V.T.'s disability, or what specific action it should have taken. This is an abject failure to plead sufficently. Without such facts, Defendant cannot be put "on sufficient notice as to the 'nature of the problem.'" *D.F.*, 2013 WL 103589 at *4.

Thus, I find that ALJ Bingham correctly determined that Plaintiffs' petition was insufficient.

### B. Timeliness of the Decision

Although the IDEA statute, and the federal and state implementing regulations, require that the ALJ make a determination on a sufficiency challenge within five days of receiving notification of such a challenge, *see* 20 U.S.C. § 1415(c)(2)(D), here, the decision on the sufficiency challenge was issued on January 29, 2014, six months after the July 16, 2013 challenge was made.[8] Plaintiff therefore argues that the untimely decision is invalid. Pl. Br. at 7–

---

[8] It appears that Defendant's insufficiency challenge, filed on July 16, 2013, may have been lost or overlooked as a result of the shuffling and reassignment of ALJs following the retirement of ALJ Martone. *See supra*, pp. 7–8. Indeed, it was only after the due process hearing was finally

8. Defendant, however, contends that the timing of the decision is irrelevant to its validity. Def. Br. at 16. While it is clear that the ALJ erred in failing to quickly resolve the issue, the remedy for this error is uncertain.

The IDEA statute, and the federal and state regulations, require a hearing officer (here, an ALJ) to make a determination within five days of receiving the sufficiency challenge. 20 U.S.C. § 1415(c)(2)(D); 34 C.F.R. § 300.504(d)(2); N.J.A.C. 6A:14-2.7(f)(1). Nonetheless, the question whether the failure of the hearing officer to make a determination within the prescribed time period voids the decision is one that appears not to have been addressed or considered by another case. Accordingly, I will examine the statutory language and the legislative history to determine the appropriate remedy.

First, the IDEA statute provides that, "[w]ithin 5 days of receipt of the notification provided under subparagraph (C), the hearing officer shall make a determination on the face of the notice of whether the notification meets the requirements of subsection (b)(7)(A), and shall immediately notify the parties in writing of such determination." *Id.* at § 1415(c)(2)(D). The federal regulation and the state regulation both use substantially the same language in setting the five day requirement for an ALJ to rule on the sufficiency of a petition. 34 C.F.R. § 300.508(d) (stating that "Within five days of receipt of notification . . . the hearing officer must make a determination"); N.J.A.C. 6A:14-2.7(f) ("within five days of receipt of the written objection, an administrative law judge will determine whether the notice meets the requirements"). However, while the statute and the regulations all use mandatory language that the ALJ make a determination within five days, neither the statute nor the regulations provide for any

---

scheduled that Defendant, on January 15, 2014, reminded or notified ALJ Bingham that Defendant was challenging the sufficiency of the Amended Petition. It was shortly thereafter that the ALJ rendered his decision.

consequence should the ALJ fail to act within that time period.

Defendant asserts that the Amended Petition "is not a separate 'request for due process'" under N.J.A.C. 6A:14-2.7(f)(1), and therefore the ALJ was not required to provide a response within five days of the challenge. Def. Br. at 16. According to Defendant, only a "request for due process" obliges an ALJ to provide a response within five days of a sufficiency challenge. *Id.* Here, the Amended Petition was an amendment to the June 13 Petition, permitted by ALJ Martone when that petition was found insufficient. However, as Plaintiffs point out, this literal reading of the regulations would also mean that Defendant's sufficiency challenge was impermissible. A respondent may only challenge the sufficiency of a "request for due process." N.J.A.C. 6A:14-2.7(f) (providing that "request for a due process hearing . . . serves as notice to the respondent of the issues in the due process complaint. The respondent may assert that . . . the notice is not sufficient."). I conclude that the statutory language, and the regulations, are not limited as Defendant claims.

The provision permitting a respondent to challenge the sufficiency of a due process petition was added to the IDEA in a 2004 amendment to the statute. *Individual with Disabilities Education Improvement Act of 2004*, Pub. L. No.108–446 § 615(c)(2), 118 Stat. 2647 (2004). According to the report of the Senate Committee on Health, Education, Labor, and Pensions, this section was added to the law in order to prevent situations in which parents filed complaints with minimal facts, "leaving the school with no idea as to what the real issues would be at the due process hearing, and forcing the school to prepare for any and every issue that could be possibly raised against it." S. Rep. 108-185 at 34 (2003). The committee stated that while "a party's right to a due process hearing should not be delayed or denied for no reason, a party's failure to provide notice of their complaint to the other party is reasonable grounds for delaying a hearing

until the other party is reasonably apprised of the issues underlying the complaint." *Id.* at 35. Similarly, the Third Circuit has commented that "the purpose of the [IDEA] statute to foster cooperation between the parents and educational agency is served by a development of the factual basis for the dispute prior to the initiation of adversarial proceedings." *M.S.-G.*, 306 Fed. App'x at 775.

In consideration of this purpose and history, I cannot find that the consequences of the failure of an ALJ to act within the prescribed time period here should fall on the school district-respondent. The purpose of the sufficiency challenge provision is to ensure that a school district has adequate notice of the claim. If a delay in a sufficiency determination must result in the petition being deemed sufficient, even if the petition was clearly inadequate, the school district would be prejudiced by being forced to "prepare for any and every issue that could be possibly raised against it."

Plaintiffs assert that, here, "by the date of ALJ Bingham's decision, Defendant cannot reasonably have misunderstood any of the factual allegations supporting the Plaintiffs' claims," and further contend that the parties "had exchanged discovery and . . . requisite witness lists and the like," Pl. Br. at 8. The fact that the school district was preparing for the scheduled hearing, however, does not mean that it had fair notice of the claims. Rather, the school may have prepared for issues that would not arise, as a result of the missing factual information in the petition—precisely the situation that the sufficiency challenge is intended to prevent. It is true that Plaintiffs will now suffer the consequences of the ALJ's delay, in that their right to obtain a due process hearing will also be further delayed, if not denied. However, the legislative history indicates that the failure to provide notice is "reasonable grounds" for a delay, and, as discussed *supra*, the blame also lies at Plaintiffs' door, since Plaintiffs' petition failed to provide the

required factual basis for the petition, despite more than one ALJ alerting Plaintiffs to their failing, and Plaintiffs being given multiple opportunities to cure the deficiencies.

Nonetheless, Plaintiffs did suffer an unnecessary six month delay in their efforts to obtain an IDEA due process hearing. Moreover, because ALJ Bingham dismissed the due process petition, *see* Jan. 29 Decision, Plaintiffs will be required to file a new Petition, which may be limited by the IDEA two-year statute of limitations. *See* 20 U.S.C. § 1415(f)(3)(C); *see also* N.J.A.C. 6A:14-2.7(a)(1). For that reason, the Court suggests that, rather than filing a new Petition, Plaintiffs request that the ALJ permit them to amend their petition once more. If the ALJ finds that Plaintiffs are permitted under the IDEA statute to amend their petition, then Plaintiffs will not suffer any harm from the lengthy delay in the sufficiency determination.

Thus, I find that the ALJ's failure to make a sufficiency determination within the time period prescribed by the IDEA statute and regulations did not invalidate the belated determination that the petition was insufficient. On this basis, in addition to the earlier finding that this Court likely lacks jurisdiction to review a sufficiency determination, summary judgment is granted in favor of Defendant.


**CONCLUSION**

For the reasons expressed herein, Defendant's Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied. An appropriate Order shall follow.


Date:   August 18, 2015                              _/s/ Freda L. Wolfson_____
                                                     Hon. Freda L. Wolfson, U.S.D.J.